USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 5 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                               :
                                               :
                                               :
IN RE ALUMINUM WAREHOUSING              :        13-md-2481 (KBF)
ANTITRUST LITIGATION                    :        and all related cases
                                               :
                                               :        MEMORANDUM
                                               :        DECISION & ORDER
--------------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On August 29, 2014, this Court issued an Opinion & Order (the "Opinion")

granting defendants' motions to dismiss p laintiffs' federal antitrust and state law

claims.[1] (ECF No. 571 ("Op.").) The Court issues the instant Memorandum

Decision & Order to provide further detail on its rationale for dismissing plaintiffs'

state law claims.

The following plaintiffs have filed complaints requesting relief under state

law: the First Level Purchasers ("FLPs") (ECF No. 271 ("FLP Compl.")));

Commercial End Users (ECF No. 242 ("Comm. Compl.")); Consumer End Users

(ECF No. 227 ("Cons. Compl.")); Mag Instrument, Inc. ("Mag") (ECF No. 226 ("Mag

Compl."); Agfa Corp. & Agfa Graphics, N.V. ("Agfa") (ECF No. 272 ("Agfa Compl.")).[2]

---

[1] On August 25, 2014, the Court granted defendant LME Ltd.'s motion to dismiss on sovereign
immunity grounds. (ECF No. 564.) For this reason, the Court's Opinion denied LME Ltd.'s motion
to dismiss as moot. (Op. at 15-16 n.13.) The Court also denied as moot motions to dismiss for lack of
personal jurisdiction by defendants Henry Bath & Son Limited, Hong Kong Exchanges and Clearing
Limited, Glencore Xstrata plc, and LME Holdings Limited. (Op. at 81.)

[2] Because defendants had not yet moved as to the complaint recently filed by Eastman Kodak Co.
(Eastman Kodak Co. v. The Goldman Sachs Grp., Inc., No. 14-cv-6849 ECF No. 1 ("Kodak Compl.")),
the Opinion did not address that complaint directly. (Op. at 2 n.2.) Accordingly, the instant opinion
also does not address that complaint directly, although any future Court ruling on the state law
claim asserted in that complaint (see Kodak Compl. ¶¶ 142-48) would follow the rationale and
determinations herein.

I.    CONSUMER PROTECTION AND UNFAIR COMPETITION CLAIMS

Together, the Commercial End Users' fourth claim for relief, the Consumer End Users' ninth claim for relief, and the FLPs' eighth claim for relief allege that defendants violated the consumer protection, unfair competition, and unfair trade practices laws of 29 states and the District of Columbia.  (Comm. Compl. ¶¶ 272-96; Cons. Compl. ¶¶ 268-92; FLP Compl. ¶¶ 429-31.)

A complaint that merely offers "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Yet plaintiffs' complaints do not even get that far—with the exception of Mag's complaint, they simply provide lists of state consumer protection statutes, without even listing the elements of these statutes, let alone explaining how their factual allegations establish valid claims for relief under them.  "Several courts have held that merely listing statutes that could provide possible causes of action without explaining even the broadest contours of how those statutes were violated 'is insufficient to state a claim.'" In re Trilegiant Corp., No. 3:12–CV–00396 (VLB), 2014 WL 1315244, at *35 (D. Conn. Mar. 28, 2014) (quoting McGarvey v. Penske Auto. Grp., 639 F. Supp. 2d 450, 465-66 (D.N.J. 2009), vacated in part on other grounds on reconsideration, No. 08–5610 (JBS/AMD), 2010 WL 1379967 (D.N.J. Mar. 29, 2010)) (collecting cases); see also McGarvey, 639 F. Supp. 2d at 452 (granting motion to dismiss state consumer fraud acts claim for relief because "[p]laintiffs do not even set forth the elements of the fifteen causes of action they assert . . . or explain how the fifteen listed statutes apply to the facts of this case").

This deficiency is a significant problem here because there is considerable variation in the elements of the state consumer protection statutes under which plaintiffs seek relief.  Further, as stated in the Court's Opinion, every state statute requires a direct or indirect allegation supporting proximate cause, and these plaintiffs have failed to include such allegations.  (Op. at 81 (citing <u>Lexmark Int'l Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1390 (2014)).)  Accordingly, plaintiffs have failed to state a claim under any state's consumer protection, unfair competition, or unfair trade practices law.[3]

The Consumer End Users' seventh claim for relief and Mag's sixth claim for relief more specifically allege that defendants' conduct violated California's unfair competition law, codified at Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>  (Cons. Compl. ¶¶ 238-43; Mag Compl. ¶¶ 146-49.)  Each of these claims for relief is predicated on defendants' having engaged in anticompetitive behavior that caused plaintiffs to pay supra-competitive prices for aluminum products.  (<u>See</u> Cons. Comp. ¶¶ 239-42 (defendants' conduct is unlawful because it violates federal and state antitrust laws); Mag. Compl. ¶ 148 (claim predicated on defendants' "caus[ing] [Mag] to pay supra-competitive and artificially-inflated prices for aluminum.").)  Because defendants failed to plausibly establish these underlying allegations of anticompetitive behavior (<u>see</u> Op. at 72-73, 80), the Court also rejects these claims.

---

[3] The Court need not address whether these claims fail for additional reasons.

II.   ANTITRUST CLAIMS

Together, the Commercial End Users' third claim for relief, the Consumer End Users' eighth and tenth claims for relief, and the FLPs' seventh claim for relief allege violations of the antitrust laws of 29 states and the District of Columbia. (Comm. Compl. ¶¶ 236-71; Cons. Compl. ¶¶ 244-67, 293-322; FLP Compl. ¶¶ 426-28.)  These allegations are deficient for the same reasons as plaintiffs' state law consumer protection, unfair competition, and unfair trade practices claims, and are dismissed for this reason.  Additionally, to the extent that these states' antitrust laws are similar to the Sherman Act and the Clayton Act, these allegations are deficient for the same reasons as plaintiffs' federal antitrust allegations.  (See Op. at 52-80.)

Agfa's second claim for relief, the Commercial End Users' third claim for relief, the Consumer End Users' eighth claim for relief, and the FLPs' sixth claim for relief allege that defendants violated New York's Donnelly Act, codified at N.Y. Gen. Bus. Law §§ 340 et seq.  (Agfa Compl. ¶¶ 130-36; Comm. Compl. ¶ 257; Cons. Compl. ¶ 257; FLP Compl. ¶¶ 420-25.)  The Donnelly Act is "essentially similar" to Section 1 of the Sherman Act, and to state a claim under it, plaintiff "must allege both concerted action by two or more entities and a consequent restraint of trade within an identified relevant product market."  Global Reins. Corp. U.S. Branch v. Equitas Ltd., 969 N.E.2d 187, 192 (N.Y. 2012).  For the reasons stated in the Court's Opinion, these plaintiffs have failed to plausibly allege either element.  (See Op. at 62-73, 77-80.)

4

The Commercial End Users' fifth claim for relief, the Consumer End Users' fourth and fifth claims for relief, and the FLPs' fifth claim for relief allege that defendants violated the Michigan Antitrust Reform Act ("MARA"), codified at M.C.L.A. §§ 445.771 et seq. (Comm. Compl. ¶¶ 297-309; Cons. Compl. ¶¶ 217-29; FLP Compl. ¶¶ 414-19.) Like the Donnelly Act, MARA is modeled on the Sherman Act. B&S Telcom, Inc. v. Mich. Bell Tel. Co., No. 304030, 2013 WL 1632006, at *3 (Mich. Ct. App. 2013) ("MARA was based on the uniform state antitrust act, which was modeled on federal antitrust statutes, primarily the Sherman Act . . . ." (citation omitted)); Bristol Window & Door, Inc. v. Hoogenstyn, 650 N.W.2d 670 (Mich. Ct. App. 2002) ("§ 2 of the MARA was derived from the Uniform State Antitrust Act, which adopted Sherman Act language and standards of legality . . . ."). For this reason, the requirements for establishing a claim under MARA are essentially the same as those for doing so under the Sherman Act. See Salmon v. City of Cadillac, No. 263586, 2005 WL 3416119, at *5 (Mich. 2005) (per curiam) ("[B]ecause Michigan's antitrust legislation is patterned after federal antitrust legislation, federal court decisions applying the Sherman Act are persuasive authority in interpreting the MARA."); Blair v. Checker Cab Co., 558 N.W.2d 439, 442 (Mich. Ct. App. 1996) ("Because the MARA and the Sherman Act require similar evidence of concerted action or combination, this Court will consider federal precedent interpreting the Sherman Act's prohibition on combination in restraint of trade."). Plaintiffs' claims under MARA are dismissed for the same reasons as their Donnelly Act and Sherman Act claims.

The Commercial End Users' third claim for relief, the Consumer End Users' sixth claim for relief, and Mag's second claim for relief allege violations of California's Cartwright Act, codified at California Business and Professions Code §§ 16700 et seq. (Comm. Compl. ¶ 245; Cons. Compl. ¶¶ 230-37; Mag. Compl. ¶¶ 120-26.) The Cartwright Act is "modeled after Section 1 of the Sherman Act," and to state a claim under the Cartwright Act, plaintiffs "must allege that (1) there was an agreement, conspiracy, or combination between two or more entities; (2) the agreement was an unreasonable restraint of trade under either a per se or rule of reason analysis; and (3) the restraint affected interstate commerce." Free FreeHand Corp. v. Adobe Sys. Inc., 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012) (quoting In re Late Fee & Over-Limit Fee Litig., 528 F. Supp. 2d 953, 961, 965 (N.D. Cal. 2007)). Because the Consumer End Users and Mag have failed to plausibly allege the existence of an unlawful agreement, conspiracy, or combination among defendants (see Op. at 62-73), the Court dismisses their Cartwright Act claims.

Additionally, plaintiffs cannot make out claims under the Cartwright Act, MARA, or the Donnelly Act because they fail to plausibly plead antitrust standing. Courts in California, Michigan,[4] and New York will preclude suits under their respective state's antitrust laws where the alleged injuries are too remote or speculative, or where there is a risk of duplicative recovery. See, e.g., Clayworth v.

---

[4] While Michigan appellate courts have not explicitly adopted Associated General Contractors or a test for whether a plaintiff's injury is too remote to permit suit under MARA, MARA does require courts to give "due deference to interpretations given by the federal courts to comparable antitrust statutes," Mich Compl. Laws § 445.784, and "courts in other states that have repealed the [direct purchaser] rule have continued to apply antitrust standing requirements to dismiss the claims of plaintiffs who assert only derivative or remote injuries." Stark v. Visa U.S.A. Inc., No. 03-055030-CZ, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004).

Pfizer, 233 P.3d 1066, 1086 (Cal. 2010); Cont'l Guest Servs. Corp. v. Int'l Bus. Servs., Inc., 92 A.D.3d 570, 571-72 (N.Y. App. Div. 2012); In re Wholesale Elec. Anti-Trust Cases I & II, 147 Cal. App. 4th 1293, 1309 (Cal. Ct. App. 2007); Ho v. Visa U.S.A., Inc., 16 A.D.3d 256, 257 (N.Y. App. Div. 2005); Kolling v. Dow Jones & Co., 137 Cal. App. 3d 709, 723-24 (Cal. Ct. App. 1982); Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp., 63 A.D.2d 244, 251-52 (N.Y. App. Div. 1978); Stark, 2004 WL 1879003, at *4. These states therefore require plaintiffs to demonstrate antitrust standing under a standard analogous to those courts have derived from the Supreme Court's opinion in Associated General Contractors of California, Inc. v. California State Council of Carpenters ("AGC"), 459 U.S. 519 (1983), as discussed in the Opinion (Op. at 35-37). Accordingly, for the same reasons that plaintiffs failed to plausibly plead antitrust standing under an AGC analysis (see Op. at 47-52), they have failed to do so under the Cartwright Act, MARA, or the Donnelly Act. Further, as explained in the Opinion, the Commercial End Users and Consumer End Users are far enough down the supply/distribution chain that they cannot plead around the issues created by the remoteness of their injury and the fact that they are seeking duplicative relief. (See Op. at 47-50.) These plaintiffs are therefore denied leave to replead these claims.[5]

---

[5] For the same reason, the Commercial End Users and Consumer End Users could not plead around the deficiencies in their claims for relief under state consumer protection, unfair competition and unfair trade practices statutes, each of which requires a direct or indirect allegation supporting proximate cause. Because the proximate cause inquiry focuses on "whether the cause is too remotely or insignificantly related to the harm to be a legal basis for liability," Poventud v. City of New York, 750 F.3d 121, 159 (2d Cir. 2014) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 278-79 (2d Cir. 2003)), the end users' position on the supply/distribution chain attenuates their ability to connect the prices they paid for aluminum to defendants' allegedly anticompetitive conduct, as opposed to other potential causes such as "labor costs, transportation costs or bottling costs" (Op. at 49). Accordingly,

III.   UNJUST ENRICHMENT CLAIM

The Consumer End Users' Eleventh Claim for relief is an unjust enrichment claim. (Cons. Compl. ¶¶ 323-26.) This claim is predicated on defendants' alleged violations of antitrust or consumer protection laws (see Cons. Compl. ¶¶ 324), which the Court has dismissed without leave to replead (Op. at 84). Accordingly, this claim warrants dismissal without leave to replead. See, e.g., Yong Ki Hong v. KBS Am., Inc., 951 F. Supp. 2d 402, 425 (E.D.N.Y. 2013) (barring "all litigants who lack antitrust standing from bringing identical claims under a common law theory of unjust enrichment); In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d 198, 231-33 (S.D.N.Y. 2012) (dismissing unjust enrichment claims in antitrust suit where underlying antitrust claims were dismissed for lack of antitrust standing); In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 412-14 (S.D.N.Y. 2011) (same); In re Flonase Antitrust Litig., 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) ("[W]here an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, [p]laintiffs should be prohibited from recovery under a claim for unjust enrichment.").

IV.   INTERFERENCE CLAIMS

Mag assets three claims under California law for interference with contractual relations: "intentional interference with contract,"[6] "intentional

---

the Court denied these plaintiffs leave to replead their consumer protection, unfair competition and unfair trade practices claims.

[6] This tort is known in many states as "tortious interference" with contract, or some variation on that name. E.g., 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 232-34 (La. 1989) (Louisiana); Lee S. Kreindler et al., 14 New York Practice, New York Law of Torts § 3:12 (2014) (New York); Christopher M. Ernst, Baldwin's Ohio Practice, Ohio Tort Law § 46:21 (2d ed. 2013) (Ohio).

8

interference with economic relationship," and "negligent interference with economic relationship." (Mag Compl. ¶¶ 127-45). Each claim is subject to dismissal based on the fact that Mag has failed plausibly to allege that defendants had knowledge of its supply contracts.

A.    Intentional Interference with Contract

Mag's third claim for relief is for intentional interference with contract under California law. Under California law, the elements of intentional interference are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec. Co. v. Bear Stearns & Co., 791 P.2d 587, 589-90 (Cal. 1990). Notably, elements (2) and (3) require a defendant to have knowledge of the specific contract with which he is interfering and of the fact that he is interfering with the performance of the contract. Little v. Amber Hotel Co., 202 Cal. App. 4th 280, 302 (Cal. Ct. App. 2011) (citing Restatement (Second) of Torts § 766 (1979)).

Mag, however, alleges only that "[a]s participants in the aluminum industry, [d]efendants were or should have been aware of [Mag's] long-standing supply contracts," and that defendants therefore "knew to a substantial certainty" that their actions would interfere with those contracts. (Mag. Compl. ¶¶ 129–30.) Under Mag's theory, all participants in an industry have constructive knowledge of all supply contracts in that industry. Accepting this theory would essentially

9

render element (2) meaningless, and the Court declines to do so. Mag's allegations

do not sufficiently allege that defendants had knowledge of Mag's supply contracts.

Accordingly, the Court dismisses Mag's intentional interference with contract claim,

with leave to replead.

B.    Intentional Interference with a Prospective Economic Advantage

Mag's fourth claim for relief is for "intentional interference with economic

relationship" (Mag Compl. ¶¶ 133-38). Because no such cause of action exists under

California law, the Court construes this claim as one for intentional interference

with a prospective economic advantage. Under California law, the elements of

intentional interference with a prospective economic advantage are: (1) an economic

relationship between plaintiff and a third party that probably would have resulted

in an economic benefit to plaintiff; (2) defendant had knowledge of the relationship;

(3) defendant engaged in wrongful conduct; (4) by engaging in this wrongful

conduct, defendant intended to disrupt the relationship, or knew that disruption of

the relationship was certain or substantially certain to occur; (5) the relationship

was disrupted; (7) plaintiff was harmed; and (7) defendant's conduct was a

substantial factor in causing plaintiff's harm. Judicial Council of Cal., Judicial

Council of California Civil Jury Instructions § 2202 (2014) [hereinafter "CACI"].

Mag's allegations are insufficient because, as stated above, Mag does not

adequately allege that defendants had knowledge of its relationships with its

suppliers. Further, regarding element (3), the conduct must be wrongful by some

legal measure other than the fact of the interference itself, Della Penna v. Toyota

10

Motor Sales, U.S.A., Inc., 902 P.2d 740, 751 (Cal. 1995), and Mag has failed to plausibly allege that defendants have violated any federal or state antitrust, consumer protection, or unfair competition law. Accordingly, the Court dismisses Mag's fourth claim for relief for "intentional interference with economic relationship," with leave to replead.

      C.    <u>Negligent Interference with a Prospective Economic Advantage</u>

Mag's fifth claim for relief is for "negligent interference with economic relationship." (Mag Compl. ¶¶ 139-45.) Because no such cause of action exists under California law, the Court construes this claim as one for negligent interference with a prospective economic advantage. Under California law, the elements of negligent interference with a prospective economic advantage are (1) the existence of an economic relationship between plaintiff and a third party that probably would have resulted in a future economic benefit to plaintiff; (2) defendant knew or should have known of this relationship; (3) defendant knew or should have known that this relationship would be disrupted if defendant failed to act with reasonable care; (4) defendant failed to act with reasonable care; (5) defendant engaged in wrongful conduct; (6) the economic relationship was disrupted; (7) plaintiff was harmed; and (8) defendant's wrongful conduct was a substantial factor in causing plaintiff's harm. CACI § 2204.

To be liable for negligent interference with a prospective economic advantage, defendant must owe plaintiff a specific duty of care. E.g., Limandri v. Judkins, 52 Cal. App. 4th 326, 348 (Cal. Ct. App. 1997). To determine whether defendant owes

plaintiff a specific duty of care, the Court must balance various factors, among which are "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Biakanja v. Irving, 320 P.2d 16, 19 (Cal. 1958).

As stated above, Mag does not adequately allege that defendants had actual knowledge of its relationships with its suppliers, which means that Mag has failed to adequately allege elements (2) and (3) of this cause of action. Further, under the Biakanja factors, Mag has failed to adequately allege that defendants owed Mag a duty of care. Mag alleges that defendant has a duty of care to every "participant in the market for aluminum" under the Commodity Exchange Act, codified at 7 U.S.C.§§ 1 et seq. (Mag Compl. ¶ 143.) But Mag is one or more levels down the supply/distribution chain from defendants, and Mag does not clearly allege that defendants even knew of Mag's existence at the time of the conduct at issue. Mag also does not allege that defendants' conduct was intended to affect plaintiff, nor does Mag plausibly allege that defendants could have foreseen that they would harm Mag; and given the uncertainty about the supply/distribution chain, the closeness of the connection between defendants' conduct and Mag's alleged injury is unknown. Accordingly, the Court dismisses Mag's fifth claim for relief for "negligent interference with economic relationship," with leave to replead.

V.        CONCLUSION

For the foregoing reasons, the Court has dismissed plaintiffs' state law claims and denied leave to replead them as to the Commercial End Users and Consumer End Users.

SO ORDERED.

Dated:      New York, New York
            September 15, 2014

_____
KATHERINE B. FORREST
United States District Judge